# IN THE COURT OF APPEALS OF IOWA

No. 23-1875
Filed January 9, 2025

**DIANNE SCHOENAUER d/b/a SCHOENAUER RENTALS,**
    Plaintiff-Appellee,

**vs.**

**JOSELI ALVES-DUNKERSON and RELATIONSHIP, INTIMACY & SEXUAL HEALTH, INC., n/k/a RELATIONSHIP & INTIMACY CENTER, INC.,**
    Defendants-Appellants.
_____

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

A tenant appeals the district court's judgment against her in a breach-of-contract action. **AFFIRMED.**

David J. Hellstern of Sullivan & Ward, P.C., West Des Moines, for appellants.

Jeffrey A. Egge of Wilson & Egge, P.C., Waukee, for appellee.

Heard by Schumacher, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Joseli Alves-Dunkerson and Relationship, Intimacy & Sexual Health, Inc.[1] (RIS) appeal the district court's judgment against them in a breach-of-contract action. Upon our review, we affirm.

## I.    *Background Facts and Proceedings.*

On October 10, 2019, Alves-Dunkerson and Schoenauer Rentals[2] signed a lease agreement for a 1851-square-foot office space located in West Des Moines, Iowa. As part of the lease agreement, Schoenauer Rentals agreed to complete a "build-out," which included several improvements to make the space suitable for RIS's business needs.[3] The lease agreement stated that it would commence "Upon Completion of [the] build-out" with a monthly rent of $2005.25 for thirty months and $2082.38 thereafter. But it also provided Alves-Dunkerson with the right to occupy the front conference room starting October 12 for a reduced rent of $125 per week. Alves-Dunkerson accepted and moved in on that date.

During the first two weeks of Alves-Dunkerson's occupancy, Schoenauer Rentals completed two of eight improvements. From October 2019 to December 2019, Alves-Dunkerson offered Schoenauer Rentals and its contractors the space to complete the build-out at any time. By December, the parties

---

[1] For convenience, we refer to Alves-Dunkerson and her corporation jointly as "Alves-Dunkerson" unless specified otherwise.

[2] While the named party in this action is Diane Schoenauer, most interactions were between Alves-Dunkerson and Diane Schoenauer's son, Russell John Schoenauer Jr., who Diane had given her power of attorney. We therefore refer to "Schoenauer Rentals" generally but, when necessary, use first names for clarity.

[3] There were eight total improvements specified in the build-out. These included items such as carpet cleaning and repair, dry wall, ceiling tile replacement, combining offices, adding a kitchen door, insulation, and adding batting "to help control sound between offices."

disagreed about the scope of the build-out and renegotiated certain items, including the kitchen door.  From December 2019 when she began seeing clients until February 2020, Alves-Dunkerson offered Schoenauer Rentals access to the space Monday through Thursday mornings and Fridays.  She further notified Schoenauer Rentals that the work must be completed before additional therapists moved in, and starting February 15, 2020, the unit would only be available to contractors on Friday and Saturday afternoons and Sundays.  The build-out work was never completed.  Despite this, Alves-Dunkerson began paying the full $2005.25 rent starting on February 1.

On May 1, Alves-Dunkerson sent a notice to Schoenauer Rentals purporting to terminate the lease.  She provided a thirty-day notice and vacated the unit.  Schoenauer Rentals relisted the space and found a replacement tenant to occupy the unit starting June 15, 2021.[4]  Schoenauer Rentals then sued Alves-Dunkerson, alleging breach of contract.  Alves-Dunkerson counterclaimed for breach of contract and fraud in the inducement.

After a bench trial, the district court ruled in favor of Schoenauer Rentals, finding that Alves-Dunkerson breached the lease agreement and awarding $34,358.48 in damages.  Alves-Dunkerson appeals, contending that the court erred in its breach-of-contract ruling and holding RIS liable for the judgment.

---

[4] While the parties do not argue this, we do note the atypical length of time between Alves-Dunkerson's abandonment of the unit and the substitute tenant's occupancy.  Russell Jr. Schoenauer testified that there was "very little activity" in the real estate market from May 2020 to June 2021, which was "in the midst of the Covid-19 pandemic."

## II.     Review.

Our review is for correction of errors at law.  *Dolly Invs., LLC v. MMG Sioux City, LLC*, 984 N.W.2d 168, 173 (Iowa 2023).  "The district court's findings of fact are binding on us if they are supported by substantial evidence," and we will only reverse if "the court has applied erroneous rules of law, which materially affected its decision."  *Id.* (cleaned up).

## III.     Discussion.

Alves-Dunkerson argues on appeal that the court erred in its breach-of-contract ruling and in holding RIS liable for damages when it was not a party to the lease agreement.  We consider each argument in turn.

*A. Breach of Contract.*

Alves-Dunkerson challenges the court's breach-of-contract ruling on two grounds: (1) finding that the build-out was not a condition precedent to the commencement of the lease; and (2) finding that she prevented Schoenauer Rentals from fulfilling its obligations under the lease agreement.

*1. Establishment of a Condition Precedent.*

Alves-Dunkerson claims the contract never actually began because a condition precedent was not completed; specifically, she cites the lease agreement language, which expressly stated it did not commence until "completion of [the] build-out."  "Conditions precedent are defined as 'those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, [and] before the usual judicial remedies are available.'"  *Vista Invs., L.C. v. Iowa Office Supply, Inc.*, No. 15-0355, 2016 WL 1680646, at *3 (Iowa Ct. App. Apr. 27, 2016)

(citation omitted). But Alves-Dunkerson conflates the formation of the contract with its enforceability. *See Niday v. Roehl Transp., Inc.*, No. 18-0712, 2019 WL 1486603, at *9 (Iowa Ct. App. Apr. 3, 2019) ("The insertion of a condition precedent in a contract does not render the same void but only delays the enforceability of the contract until the condition precedent has taken place." (citation omitted)).

To determine whether a condition precedent exists, we consider "the intent of the parties." *Id.* at *4 n.4 (citation omitted). The parties here do not dispute that the build-out was a condition precedent. Both Alves-Dunkerson and Russell Schoenauer Jr. testified that the build-out was meant to be completed before the lease started. The court similarly found that the build-out was a condition precedent but "only to Schoenauer Rentals receiving the full amount of the base rent, not the contract as a whole." Therefore, "Schoenauer Rentals had the right to immediate performance on every other promise contained in the contract prior to the build-out being completed." We therefore consider whether the condition precedent has been excused to determine whether the contract was enforceable. *See Vista Invs., L.C.*, 2016 WL 1680646, at *3.

*2. Alleged Excuse of Performance.*

Alves-Dunkerson contends that the court erred in finding that she prevented Schoenauer Rentals access to complete the build-out and excusing the nonoccurrence of the condition precedent. *See Emp. Benefits Plus, Inc. v. Des Moines Gen. Hosp.*, 535 N.W.2d 149, 155 (Iowa Ct. App. 1995) ("[I]f one party to a contract prevents the other from performing a condition or fails to cooperate to allow the condition to be satisfied, the other party is excused from showing

compliance with the condition."). The parties agree on the facts: the unit was accessible for most of fall 2019, but by February 2020, Alves-Dunkerson was only permitting access a handful of hours per week and only on weekends. The court found Alves-Dunkerson's offer for Monday through Thursday mornings and Fridays to be "very narrow time frames" and admonished her for failing to switch clients to online sessions. While the court was critical of Alves-Dunkerson's approach, she fails to establish how the court "applied erroneous rules of law." *Dolly Invs., LLC*, 984 N.W.2d at 173. Instead, she only disagrees with the court's fact findings, which are binding on us if supported by substantial evidence. *See id.* The court found that Alves-Dunkerson's "unreasonable timeline demands" inhibited Schoenauer from bringing in contractors to finish the build-out. This finding was supported by Schoenauer Rental's evidence that Alves-Dunkerson limited access to the contractors and that she confirmed by her own testimony. Because substantial evidence supports those findings, we are bound by them. *See id.* Accordingly, we must affirm.

*B. Personal Liability of Corporation.*

Alves-Dunkerson further claims that she and the corporation cannot both be held liable. However, she does not provide a single authority for this assertion. *See* Iowa R. App. P. 6.903(2)(a)(8)(3) (waiving issues inadequately argued on appeal). While we could end our analysis there, we note that this is also incorrect. *See* Restatement (Third) of Agency § 6.01 (2006) (discussing circumstances where both an agent and principal may be held liable under one contract). To determine whether an agent has the authority to act on behalf of the principal, we consider "the principal's manifestation [of assent] made to the agent." *Id.* at cmt. b.

We further consider "whether the agent objectively took actions for the purpose of benefiting the principal." *Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 110 (Iowa 2011). Under these facts, we find that Alves-Dunkerson and Schoenauer had a clear expectation for the lease agreement, and Alves-Dunkerson acted for RIS's benefit. Both parties were aware from the beginning of the transaction that the space was intended for the sole purpose of Alves-Dunkerson's therapy practice. She negotiated a build-out to meet RIS's business needs, signed the contract using both her own name and RIS, and operated the business out of the unit for a period of months. We therefore affirm the district court's ruling holding both her and the corporation liable under the lease agreement.

## IV.   Disposition.

Because the court did not err in finding that Alves-Dunkerson and RIS breached the contract, we affirm.

**AFFIRMED.**